## ALFRED K. HILLS *vs.* AUSTIN BEARSE.

The assent in writing, required by Gen. Sts. c. 108, § 3, of the husband of a married woman to her conveyance of her separate real estate, which is not occupied by them as a homestead, is sufficiently shown by proof of a deed thereof, signed and sealed by both of them, and containing these words: "In witness whereof, I, the said" married woman, "and B., my husband, in token of our release of all right and title of or to both dower and homestead in the granted premises, have hereunto set our hands and seals."

If one who has been employed as agent to collect the rents of real estate continues to collect them after a transfer of the title, he is liable for the same to the true owner, in an action for money had and received, although he was ignorant of the transfer.

CONTRACT, to recover for the rents of certain real estate, received by the defendant to the plaintiff's use.

At the trial in the superior court, before *Morton*, J., the plaintiff put in evidence a deed to himself of the real estate referred to, in which Jane E. Hunt, wife of Benjamin Hunt, was named as sole grantor. and which, in conclusion, contained these words: " In witness whereof, I, the said Jane E. Hunt, and Benjamin

Hunt, my husband, in token of our release of all right and title of or to both dower and homestead in the granted premises, have hereunto set our hands and seals this twenty-fifth day of September in the year of our Lord eighteen hundred and sixty-two." This deed was signed and sealed by Jane E. Hunt and Benjamin Hunt, and was the only evidence introduced by the plaintiff to prove his title. He also introduced evidence tending to prove that the defendant, between September 1862 and March 1863, collected certain rents of the tenants occupying the premises.

The defendant thereupon introduced evidence tending to show that in October 1860 William Boynton, mortgagee of the premises, under two mortgages, had a right to receive the rents thereof, and employed him to collect them, and that he continued to do so till March 1863; that in October 1862 Boynton made a parol agreement to assign one of his mortgages to the defendant, but executed no assignment thereof; and that in fact Boynton had previously assigned both of his mortgages. There was also evidence tending to show that nobody but the plaintiff made any claim upon the defendant for the money collected of the tenants, and that the defendant still retained it. The defendant testified that he had no notice of the existence of the deed to the plaintiff till March 1863.

The defendant asked the court to instruct the jury that the plaintiff had not proved a good title in himself; and that, if the defendant had no notice of the plaintiff's ownership of the premises, there was no promise, express or implied, on his part to pay over to the plaintiff the rents. The judge declined so to rule, and instructed the jury that the deed was sufficient, in the absence of any evidence to control it, to authorize the jury to find a title in the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. Nickerson,* for the defendant. The title to real estate can not be tried in this form of action. *Brigham* v. *Winchester,* 6 Met. 464, and cases cited. The deed of Mrs. Hunt was void because she was described to be, and was in fact, a married

woman, and there was no assent of her husband in writing to the conveyance, nor did he join therein with her.

*W. G. Colburn,* for the plaintiff. By signing and sealing the deed, the husband complied with Gen. Sts. *c.* 108, § 3. *Woodward* v. *Seaver,* 38 N. H. 29. *Elliot* v. *Sleeper,* 2 N. H. 525. *Stone* v. *Montgomery,* 35 Mississippi, 83–107. 2 Washburn on Real Prop. 566, and cases cited. Otherwise, the deed is void. But such a construction should be given as to carry out the intention of the parties and uphold rather than destroy the deed. Broom's Max. (2d ed.) 481, 482, 490, 570. *Anderson* v. *Baughman,* 7 Mich. 77. Shep. Touchstone, 85, 87. *Richardson* v. *Palmer,* 38 N. H. 218. The husband, by signing and sealing the deed, must have meant something; but he could have meant nothing less than an assent to his wife's conveyance. No privity of contract is necessary to support this action.

CHAPMAN J. The plaintiff claims title under a deed from Jane E. Hunt, the wife of Benjamin Hunt, and the principal question in the case is, whether the deed was so executed as to be valid. By Gen. Sts. *c.* 108, § 3, a married woman is authorized, among other things, to convey her separate real estate. But no conveyance of such estate is valid " without the assent of her husband in writing, or his joining with her in the conveyance," or the assent of a judge, in certain cases. In this deed the husband has not joined with the wife as grantor; for in all its words of conveyance and covenants of seisin and warranty it purports to be merely her deed, and in the description of the land it is said to have been conveyed to her by a deed which is referred to. The husband is first introduced as a party in the *testimonium* clause. That part of the deed is as follows:

" In witness whereof, I, the said Jane E. Hunt, and Benjamin Hunt, my husband, in token of our release of all right and title of or to both dower and homestead in the granted premises, have hereunto set our hands and seals this twenty-fifth day of September in the year of our Lord eighteen hundred and sixty-two." The instrument is signed and sealed by both of them.

This language states the purpose for which the husband set his hand and seal to the deed jointly with his wife, namely, " in

token of our release of all right and title of or to both dower and homestead in the granted premises." The general rule of construction which is applied to such cases is, that the expression of a purpose excludes the idea of a signature or sealing for any other purpose. *Expressio unius exclusio· alterius.* If any-thing can make this doubtful in the present case, it is the fact that the expressed purpose is absurd; because there was no right of dower or homestead in the husband or wife, which these words would tend to convey. The language is therefore nuga-tory. Our methods of conveyance are so simple that deeds are often prepared by persons who are extremely ignorant in respect to such matters, and probably the form of this deed is· to be im-puted to the ignorance of the scrivener. It cannot be supposed that the parties adopted the language intelligently.

One of the rules to be adopted in the construction of deeds is, that words which are insensible are to be rejected. 3 Atk. 136. Another rule to be adopted, if possible, is, that when a deed cannot take effect according to the letter, it is to be con-strued so as to take some effect or other. Shep. Touchstone, 87. If, in pursuance of these rules, we reject the unmeaning words, and seek to give some effect to the instrument in prefer-ence to declaring it wholly void, we shall find that the husband has signed and sealed it "in witness" that his wife has executed it. If we would sustain the deed, it is necessary that we inter-pret these words as expressing his assent to the deed as a valid conveyance by his wife. A majority of the court are of opinion that they may be so interpreted, since they cannot possibly have any other effect. If they did not mean this they were unmeaning, and the deed is a nullity; because, as we have seen, the statute requires an assent in writing, which means a written signature to written words expressing assent. Regarding the deed as con-taining the husband's written assent to the wife's conveyance, it is to be held a valid conveyance, and the ruling on that point was correct.

The defendant asked the court to instruct the jury further that if they should find that the defendant had no notice of the plaintiff's ownership of the property, then there was no promise

express or implied, on the part of the defendant, to pay over the rents collected by him to the plaintiff, and the plaintiff cannot recover them in this action. The court declined to give this instruction, and this ruling is excepted to.

It appears that the defendant began to collect rents in 1860, as the agent of one Boynton, who then held two mortgages upon the land, made by Benjamin Hunt. But Boynton sold and assigned his mortgages prior to October 1862, and by that assignment his own authority and the authority to collect rents was terminated. He had not entered to foreclose his mortgages, but collected the rents under an arrangement with Hunt, by which he was to receive the rents and profits. This arrangement would of course terminate when he ceased to be mortgagee. After he made his assignment, namely, in October 1862, he agreed by parol to sell to the defendant one of the mortgages; but such an agreement can have no effect upon this case. The defendant must be regarded as having received the rents from the tenants after that period under an implied agreement with them that he was the agent of the true owners of the land, and not under any claim of title in himself. He testified that he had no knowledge of the existence of the deed from Jane E. Hunt to the plaintiff till March 1863, when it was made known to him. But assuming that he believed Boynton to have the right to the rents, it would not follow that the title was in controversy, but merely that he collected the money under a mistake as to the ownership. There does not appear to be any adverse claimant to the rents by the facts stated in the report, and the only question presented is, whether the defendant, who has, without authority from the plaintiff, collected rents which belong to him, is liable to an action by the plaintiff to recover the money thus received.

In *Hall* v. *Marston*, 17 Mass. 575, it is said that no privity of contract is necessary between the parties to support this action, except that which results from one man's having another's money, which he has not a right conscientiously to retain. Where the fact is proved that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the

law creates the privity and the promise. The same doctrine has been stated in several other cases, and is well settled. Upon this principle, the action may be maintained,

*Exceptions overruled.*